IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:11-CV-88-D

| | |
|---|---|
| NORMAN RANDY WORDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Norman Randy Worden ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 35, 38). Both parties submitted a memorandum in support of their respective motions. (D.E. 36, 39). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 40). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.  BACKGROUND

A.  Case History

Plaintiff filed an application for DIB on 6 January 2009, alleging a disability onset date of 30 March 2004. Transcript of Proceedings ("Tr.") 12. His application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 12. On 10 August 2010, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 12, 57-88.

The ALJ issued a decision denying plaintiff's claim on 27 October 2010. Tr. 12-20. Plaintiff timely requested review by the Appeals Council. Tr. 6. The Appeals Council denied the request for review on 25 April 2011. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding on 6 June 2011 seeking judicial review pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

## B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe the attributes an impairment must have to be disabling:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

2
Case 4:11-cv-00088-D Document 41 Filed 05/29/12 Page 2 of 13

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C. Findings of the ALJ

Plaintiff was 56 years old on the alleged onset date of disability and 62 years old on the date of the administrative hearing. *See* Tr. 18 ¶ 7. He has a high school education and a master's degree. Tr. 19 ¶ 8; 61.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of 30 March 2004 through 30 June 2009, his date last insured. Tr. 14 ¶¶ 1, 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): posttraumatic stress disorder; depression; and prostate cancer post prostatectomy in remission with urinary frequency. Tr. 14 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 15 ¶ 4.

The ALJ next determined that through the date last insured, plaintiff had the RFC to perform medium work, including the ability to adapt to workplace changes, subject to the limitations that he requires one bathroom break per hour; can perform only simple, routine, repetitive tasks; and can have only limited contact with the public and coworkers. Tr. 16 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work as an assistant principal. Tr. 18 ¶ 6.

At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including kitchen helper, laundry worker II, and hospital cleaner. Tr. 19 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 20 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently

explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ: (1) improperly substituted his opinion for that of one of his treating physicians, Gregory F. Murphy, M.D.; and (2) failed to make proper findings regarding the two witnesses who testified on plaintiff's behalf at the hearing. Each contention is analyzed in turn below.

## C. Evaluation of Dr. Murphy's Opinion

In a letter dated 25 November 2008, Dr. Murphy, who treated plaintiff for prostate cancer, opines that "[d]ue to the frequency of urination [plaintiff] now has, he is unable to tend to any particular tasks for more than 30 minutes at a time due to the frequency of urination." Tr. 218. He then states that, "I believe that it is within medical reason that he experiences difficulty in working and needs to be excused from such." Tr. 218. The ALJ gave Dr. Murphy's opinion "little weight." Tr. 8 ¶ 5. The ALJ also found specifically, as indicated, that plaintiff needs a bathroom break only once per hour. Tr. 8 ¶ 5. Plaintiff contends that the ALJ substituted his lay opinion for the medical opinion of Dr. Murphy in violation of well-established precedent barring an ALJ from doing so. *E.g., Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984). The court disagrees.

The Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other

substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)[1]; *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 404.1527(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

Similarly, the opinions of physicians who examine a claimant are generally entitled to more weight than those of physicians who did not perform an examination. *See* 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. *Id.* Unless

---

[1] Citation is to the version of the regulation in effect at the time the ALJ issued his decision, 27 October 2010.

the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. *Id.* § 404.1527(f)(2)(ii). Notably, however, opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See id.* § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

The court finds that the ALJ, rather than substituting his opinion for that of Dr. Murphy, evaluated Dr. Murphy's opinion in conformance with the foregoing Regulations and adequately explained his evaluation. The ALJ began his evaluation by finding that Dr. Murphy's opinion "is a determination on the issue of disability and reserved to the Commissioner per Social Security Ruling 96-5p." Tr. 18 ¶ 5. The portion of Dr. Murphy's opinion stating that plaintiff needs to be excused from work clearly is of this character. Thus, this portion of the opinion was not entitled to any special weight because of its source. 20 C.F.R. § 404.1527(f)(1); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5.

The ALJ, appropriately, went on to consider Dr. Murphy's opinion, including the portion finding that plaintiff is disabled, "in conjunction with the totality of the evidence." Tr. 18 ¶ 5. The ALJ's reference to the "totality of the evidence" is notable because in the preceding portion of this section of his decision (in which the ALJ determined plaintiff's RFC) and elsewhere the ALJ reviews and assesses comprehensively the fact and opinion evidence in the record, including that bearing on plaintiff's urination problem. The ALJ's assessment of this evidence provides a backdrop for the ALJ's evaluation of Dr. Murphy's opinion and provides insight into it.

The ALJ found that Dr. Murphy's opinion "is not consistent with the actual activities the [plaintiff] is able to perform such as hunting, fishing, going to the beach, and golfing." Tr. 18 ¶

5. As the ALJ himself notes earlier in this section of his decision, plaintiff's "actual activities" are not limited to those he lists here as examples, but include "the ability to dress, undress, drive, mow the grass, [and] work on projects such as fixing golf carts." Tr. 17 ¶ 5. Substantial evidence of record shows that plaintiff is able to perform all the various activities cited by the ALJ, along with other activities. Tr., *e.g.*, 60-64, 73-74, 135, 154, 155, 156, 157. Such activities of daily living, including the leisure activities noted, may properly be relied upon by an ALJ in determining whether a claimant is disabled. *See, e.g., Kellihan v. Shalala*, 30 F.3d 129 (Table), 1994 WL 411615, at *2 (4th Cir. 1994); *Jeffries v. Astrue*, No. 3:10cv1405, 2012 WL 314156, at *26 (S.D. W. Va. 1 Feb. 2012) (holding that ALJ properly considered plaintiff's ability to engage in vigorous hobbies after the alleged onset date of disability); *Watson v. Astrue*, No. 5:10CV103, 2011 WL 3627160, at *28 (N.D. W.Va. 22 July 2011) (mag. judge's rep. and recommendation) (deeming it permissible for ALJ to consider plaintiff's daily activities, including a hunting trip, in connection with his disability findings), *aff'd and adopted*, 2011 WL 362157 (17 Aug. 2011); *Roop v. Astrue*, No. 7:07cv214, 2008 WL 747078, at *10 (W.D. Va. 17 Mar. 2008) (finding that ALJ properly considered plaintiff's activities of daily living and/or leisure activities "in addition to the medical and opinion evidence of record, in order to determine the extent to which [plaintiff's] symptoms limited her capacity for work").

Other substantial evidence of record also supports the ALJ's attribution of little weight to Dr. Murphy's opinion. For example, the two nonexamining Disability Determination Services ("DDS")[2] physicians who completed Physical RFC Assessments of plaintiff did not find his frequent urination (or any other condition) to be disabling. Tr. 357-64 (20 Feb. 2009 Physical

---

[2] The Disability Determination Services is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 25 May 2012).

RFC Assess. of Janet Johnson-Hunter, M.D.); 466-73 (1 June 2009 Physical RFC Assess. of Frank Virgili, M.D.). While, like the ALJ, both these physicians found Dr. Murphy's opinion on disability to be of the type reserved to the Commissioner, one, Dr. Johnson-Hunter, determined the opinion to be inconsistent with other information in the case, just as the ALJ did. Tr. 363. Shortly before his evaluation of Dr. Murphy's opinion, the ALJ explains that he gave "great weight" to these assessments because they "are consistent with the medical findings of record regarding the [plaintiff's] past prostate cancer and the [plaintiff's] significant daily activities." Tr. 18 ¶ 5. Plaintiff does not specifically challenge this determination by the ALJ.

Further, plaintiff identifies no physician other than Dr. Murphy, and the court is aware of none, determining plaintiff to be disabled because of frequent urination (or for any other reason). Moreover, the opinion by Dr. Murphy is itself conclusory, bereft of supporting data. *See* 20 C.F.R. § 404.1527(d)(3).

The ALJ's finding that plaintiff needs bathroom breaks every hour, not every half hour as Dr. Murphy opined, finds support in the same body of evidence. In addition, Dr. Murphy gave his opinion during a period, late 2008, when plaintiff was still drinking and at times heavily, obviously contributing to the need to urinate. *See* Tr., *e.g.*, 326 (23 Sep. 2008; up to 16 beers or more per day); 317, 318 (21 Oct. 2008; 12 beers per day); 322 (8 Oct. 2008; 4.3 beers per day); 307, 308 (4 Nov. 2008; 7 beers per day); 416, 419 (17 Feb. 2009; 6 or more drinks daily or almost daily in past year); 407, 408 (20 Mar. 2009; 12 pack per day prior to November). Furthermore, to the court's knowledge, no other physician found plaintiff to require breaks at half-hour intervals. Plaintiff himself testified at the hearing that he can go 45 minutes without a bathroom break. Tr. 70. He also reported in May 2009 to a DDS examining physician, Satick Kumer, M.D., that he urinated 18 times during the daytime, which, assuming the daytime lasts

16 hours, is almost once an hour. Tr. 496. In addition, during an hour-and-a-half-long interview with Social Security personnel in January 2009, after he had purportedly stopped drinking, he left to use the bathroom only once. Tr. 138, 139.[3]

Notably, the ALJ did not eschew altogether a limitation based on plaintiff's urination problem, but rather found bathroom breaks were required on a somewhat less frequent basis than Dr. Murphy specified. Thus, true his word, the ALJ did appear to give Dr. Murphy's opinion some weight. Moreover, the requirement of bathroom breaks once an hour is manifestly a significant one; a person would not ordinarily require breaks with nearly such frequency.

In sum, the ALJ's evaluation of Dr. Murphy's opinion conforms to the applicable legal standards and is supported by substantial evidence. The court accordingly rejects plaintiff's challenge to the ALJ's evaluation as meritless.

### D. Evaluation of Supporting Witness Testimony

At the hearing, plaintiff's wife and his long-term friend and golfing partner, James Lamb,[4] testified on his behalf. Tr. 72-79 (wife); 80-83 (Lamb). Plaintiff contends that the ALJ failed to adequately explain his determination regarding the credibility of these witnesses and the weight he accorded their testimony. The court disagrees.[5]

---

[3] A seemingly obvious remedy to the disabling effect of frequent urination plaintiff alleges would be for him to wear undergarments designed for incontinence. If the alleged disabling effect of a condition can reasonably be controlled by remedial measures, it generally cannot be the basis for a finding of disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling."). Notably, the vocational expert testified that a person could wear such undergarments performing the three occupations the ALJ found plaintiff able to perform. Tr. 85-86. Plaintiff testified that he chooses not to wear such undergarments because he can feel when he needs to urinate. Tr. 65.

[4] Although the ALJ spelled this witness's last name "Lamm," plaintiff uses the spelling "Lamb," as does the Commissioner and the transcript of the hearing before the ALJ. Based on the assumption that plaintiff would be in the best position to know the correct spelling because of the relationship he has with this witness, the court is using the "Lamb" spelling.

[5] Because the ALJ did adequately explain his evaluation of plaintiff's wife's and Lamb's testimony, plaintiff's reliance on cases in which the ALJ did not do so, *e.g., Cooper v. Astrue*, No. 2:08-CV-18-FL, 2009 WL 928548, at *5-*6 (E.D.N.C. 3 Apr. 2009), is misplaced.

The ALJ presents a brief summary of the testimony of both these witnesses together with that of plaintiff.[6] Tr. 17 ¶ 5. As to plaintiff's wife, he notes that she testified that plaintiff urinates frequently, sometimes has problems controlling his anger, and lacks focus. Tr. 17 ¶ 5. As for Lamb, the ALJ indicates that he also testified about plaintiff's frequent urination.[7] Tr. 17 ¶ 5.

The ALJ then explains that this testimony, along with testimony by plaintiff himself, shows that he can perform a wide range of activities of daily living that is consistent with the RFC the ALJ determined plaintiff to have. Tr. 17 ¶ 5. He next notes that plaintiff's urinary frequency does not prevent him from performing these activities. Tr. 17 ¶ 5. He finds that the same is true with respect to his anger problem and that medical records indicate this problem shows improvement with anti-depressants. Tr. 17 ¶ 5. Plaintiff's wife's testimony clearly corroborated the responsiveness of the anger problem to medication. Tr. 74-75, 75-76. In addition, the ALJ found expressly that plaintiff's wife's testimony about his purported lack of focus was countered by the finding of examining consultative psychiatrist Anthony G. Carraway, M.D. in a 3 June 2009 report that plaintiff has no problems with attention or concentration. Tr. 477.

Thus, the ALJ addresses all the principal areas about which plaintiff's wife and Lamb testified. The gist of his evaluation is that, as with plaintiff's testimony,[8] he deemed their testimony credible to the extent it was consistent with the RFC he determined plaintiff to have

---

[6] Although the ALJ states that plaintiff's wife testified that "he uses the bathroom every 45 minutes when awake and wakes up a few times during the night to urinate," Tr. 17, her reference to 45 minutes was to the frequency with which he uses the bathroom at night, Tr. 78. Plaintiff did not complain of this error in his brief, and the court does not believe it is material.

[7] Lamb also made three short statements about plaintiff's anger problem. Tr. 82.

[8] Plaintiff does not challenge the ALJ's evaluation of the credibility of his testimony.

and, to that extent, he gave their testimony weight.[9] The court therefore concludes that the ALJ's treatment of the testimony of plaintiff's wife and Lamb conforms to the applicable legal standards and is supported by substantial evidence. The court accordingly rejects plaintiff's challenge to it.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 25th day of May 2012.

James E. Gates
United States Magistrate Judge

---

[9] Given the patently corroborative and arguably cumulative nature of Lamb's testimony and its extreme brevity, spanning less than three full pages in the transcript, the court questions whether even if the ALJ had failed to adequately explain his assessment of Lamb's credibility and the weight he gave this testimony, the failure to do so would have risen to the level of reversible error.